UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ZANTAZ ENTERPRISE ARCHIVE SOLUTIONS, LLC, fka CAPAX DISCOVERY, LLC<br><br>   *Plaintiff,*<br><br>v.<br><br><br>MIDMICHIGAN HEALTH, and MIDMICHIGAN HEALTH CARE SYSTEMS, INC.<br><br>   *Defendants.*<br>_____/ | CASE NO. 1:23-cv-10932<br><br>HON. THOMAS L. LUDINGTON DISTRICT JUDGE<br><br>HON. PATRICIA T. MORRIS MAGISTRATE JUDGE |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLANTIFF'S SECOND AMENDED COMPLAINT (ECF No. 10)**

**I. RECOMMENDATION**

For the reasons set forth below, **I RECOMMEND** that the motion be **GRANTED IN PART AND DENIED IN PART**, e.g., that this Court **GRANT** Defendant's motion to dismiss as to Plaintiff's breach of contract claim and **DENY** the motion as to Plaintiff's unjust enrichment claim.

**II. REPORT**

 **A. Background**

Plaintiff initially filed the complaint in this matter in the Supreme Court of the State of New York on September 21, 2022. (ECF No. 1, PageID.10.) The case was removed to this Court on April 21, 2023. (ECF No. 1, PageID.1.) On May 19, 2023, Plaintiff filed the operative amended complaint in this matter. (ECF No. 6.) Plaintiff's two-count complaint alleges one claim for breach of contract and one claim for unjust enrichment. (*Id.*) Stated broadly, the complaint describes this case as concerning Defendants' "unauthorized use of Plaintiff's proprietary and licensed software without compensation[.]"

Defendants filed the instant motion to dismiss on June 20, 2023. (ECF No. 10.) Plaintiff responded (ECF No. 17, 18 (amended response)), and Defendants replied. (ECF No. 19.)

**B. Legal Standard**

Under Fed. R. Civ. P. 12(b)(6), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). Accordingly, a plaintiff's complaint shall be dismissed for failure to state a claim if it lacks sufficient "factual matter (taken as true) to" provide "plausible grounds to infer" that the elements of a claim for relief could be met. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007); *see* Fed. R. Civ. P. 12(b)(6). A complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual

allegations. *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The requirement to provide a plausible claim does not require that a claim be "probable"; however, a claim must be more than merely "conceivable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009).

When considering whether a complaint states a claim, "[t]he courts must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Still, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

### C. Analysis

Plaintiff's operative complaint avers that Zantaz (formerly Capax) earns revenues by "licensing its software products for use of third-party clients" and providing technical maintenance and support services to its licensee clients. (ECF No. 6, PageID.13.) Autonomy, Inc. ("Autonomy") "owned the software product referred to herein as 'NearPoint' and all licensing rights related thereto, as well as all maintenance

3

and support agreements for the NearPoint software product." (*Id*.) "The NearPoint software product is used to archive email mailboxes and data." (*Id*.) "Pursuant to a Software Support and Maintenance Agree entered directly between MyMichigan and Zantaz, effective April 1, 2014, Zantaz agreed to provide MyMichigan premium maintenance and support services [for] the 4,000 NearPoint licenses it had at that time." (*Id*. (citing ECF No. 6-2).) On July 28, 2014, Zantaz and Autonomy entered into a "Source Code License Agreement" where "Zantaz obtained the exclusive licensing rights to NearPoint software, including MyMichigan's pre-existing 4,000 NearPoint licenses." (*Id*. at PageID.13-14, Ex. 2, Page ID.36-57.) On that same date, via "an Assignment of Supports Contracts Agreement entered between Zantaz and Autonomy, [] Zantaz also obtained the rights and obligations to Autonomy's maintenance and support services contracts for its licensed NearPoint software, which included and listed MyMichigan and its then-support contract for its NearPoint licenses." (*Id*. at PageID.14, Ex. 3, PageID.59-71.)  The complaint also describes and attaches invoices showing that MyMichigan purchased an additional 1,500 mailbox licenses on September 20, 2014 an additional 1,000 mailboxes on October 18, 2017, and 650 mailboxes on March 14, 2018. (*Id.* at PageID.15, Exs 4, 5, and 6.)

The complaint also describes that a "NearPoint software license is required for each user mailbox for which the NearPoint software product was used to archive an email mailbox and data, as well as each user mailbox actively using NearPoint to archive email data." (*Id.* at PageID.14.) It also states that "[a]n end user is prohibited

4

from using one NearPoint license to fully archive an email mailbox, and then use the same NearPoint licenses to archive another email mailbox. That would require two NearPoint licenses. In other words, one NearPoint license is equivalent to one archived email mailbox whether the mailbox was actively archiving data or not." (*Id.* at PageID.14-15.) Unlike the other averments, these averments are not supported by any reference to an exhibit or other documentation. The complaint then alleges that "MyMichigan knew and understood that a NearPoint license was required for each mailbox that used or is using the software, regardless of whether the archived mailbox was active." (*Id*. at PageID.15.) This averment is also not supported by any reference to any document.

The complaint indicates that the "NearPoint software product was provided to third-party licensees including MyMichigan, via electronic download" and that "[i]n order for a third-party licensee to install, activate, and use the licensed NearPoint software on an email mailbox, the third-party was required to agree to Zantaz's End User License Agreement ("EULA") to complete the software installation and activation." (*Id.* at PageID.16, (citing ECF No. 6-8).) The complaint surmises that "MyMichigan agreed to a separate EULA every time it installed and activated the NearPoint software for us eon an email mailbox." (*Id*.)

The complaint further alleges that "[o]nce an end user such as MyMichigan installs and activates the NearPoint software, it can again install and activate the NearPoint software for use on additional mailboxes at any time by following the

5

original installation process, which includes agreeing to the EULA." (*Id*. at PageID.17.) "Thus, a third-party licensee has the ability to use more NearPoint licenses than authorized and paid for without Zantaz's knowledge, until and unless Zantaz discovers the true number of mailboxes that used or are using the NearPoint software." (*Id*.) The complaint then concludes that "[b]ased on the foregoing, MyMichigan agreed to the terms of the EULA every time it installed and activated the NearPoint software for one of its mailboxes, including when MyMichigan installed and activated Near Point licenses in addition to and above the 7,150 NearPoint licenses it was authorized to use[] and paid for." (*Id*.)

In November 2018, the complaint states that Zantaz asked MyMichigan how many NearPoint licenses it was using and "MyMichigan confirmed its understanding that a NearPoint license is required for each individual user email mailbox whether active or inactive." (*Id*.) There is no citation to any email or affidavit or other particularized statement alleged to have been made.

In March 2019, MyMichigan requested a quote for a one-year renewal and purchase of 323 additional licenses but later that month, MyMichigan requested only a quote to renew the maintenance and support agreement because "unbeknownst to Zantaz, MyMichigan had already been migrating off the NearPoint software." (*Id*. at PageID.18.) Eventually, MyMichigan did not renew even the support and maintenance agreement but did purchase an additional 323 NearPoint licenses in April 2019, bringing the total number of licenses to 7,473. (*Id*. at PageID.19.)

In April 2021, "MyMichigan provided Zantaz a report evidencing that MyMichigan used NearPoint for 12,930 mailboxes." (*Id*.) Since MyMichigan had purchased 7,473 licenses but used 12,930 mailboxes, Plaintiff contends MyMichigan used 5,457 licenses for NearPoint software for which MyMichigan lacked authorization and did not pay for. (*Id*.) At $40 per license/mailbox, Zantaz requested that MyMichigan pay it $218,280 for the 5,457 licenses it used but did not pay for. (*Id*. at PageID.18-19.) After MyMichigan did not pay, Zantaz brought this lawsuit.

Zantaz's complaint avers two causes of action: (1) breach of contract based on MyMichigan's alleged breach of the EULA; and (2) unjust enrichment based on MyMichigan's use of the NearPoint software without authorization or payment. Zantaz seeks damages in the amount of $218,280 plus interest at the contractual rate of 1.5% per month, attorney fees, costs, and statutory interest on the second cause of action.

Defendant MyMichigan moves to dismiss because Plaintiff has not established breach of any valid and enforceable contract between the parties and because any contract claim is time-barred under New York law. (ECF No. 10, PageID.101.) Defendant also contends that any unjust enrichment claim should be dismissed because it is duplicative of the breach of contract claim or because there was no benefit provided to MyMichigan that resulted in any inequity to Plaintiff. (*Id*.)

As to the breach of contract claim, Defendant contends that Plaintiff's complaint has "not provide[d] an executed EULA that is enforceable in accordance with its own terms" and "fails to identify the specific provisions of the EULA that MyMichigan

7

allegedly breached." (ECF No. 10, PageID.110.) Defendant notes that the elements of a breach of contract claim under New York law (if the EULA is enforceable) and Michigan law are virtually identical. (*Id.* (first citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000); and then citing *Dunn v. Bennett*, 303 Mich. App. 767 (2014)).) The essential elements are: (1) the existence of a contract; (2) plaintiff's performance pursuant to the contract; (3) defendant's breach of its contractual obligation(s); and (4) damages resulting from the alleged breach. (*Id.*)

Plaintiff counters that the complaint "clearly identified the contract that Defendant breached – the EULAs that Defendant entered and agreed to every time it installed and activated NearPoint, and sufficiently stated that Defendant breached the EULAs by using additional NearPoint licenses without authorization and without payment if Plaintiff licensing fees as required by the EULA, despite Plaintiff's demand." (ECF No. 18, PageID.702-03.) Again, however, Plaintiff does not cite to any language in the EULA for this position and notes that it need not "submit proof at this pleading stage of the case[.]" (ECF No. 18, PageID.703.)

The EULA attached to the complaint (ECF No. 6, PageID.79-83), does not contain any provision that alerts the user that "a NearPoint license was required for each mailbox that used or is using the software, regardless of whether the archived mailbox was active." (*Id.* at PageID.15.) Yet, Plaintiff alleges that a "NearPoint software license is required for each user mailbox for which the NearPoint software product was used to archive an email mailbox and data, as well as each user mailbox actively using

8

NearPoint to archive email data." (*Id.* at PageID.14.) And further that "[a]n end user is prohibited from using one NearPoint license to fully archive an email mailbox, and then use the same NearPoint licenses to archive another email mailbox. That would require two NearPoint licenses. In other words, on NearPoint license is equivalent to one archived email mailbox whether the mailbox was actively archiving data or not." (*Id.* at PageID.14-15.) However, there are no citations to any document, let alone the EULA, that supports these averments. Nor does the EULA itself contain any such provisions. It remains unclear how users at MyMichigan, assuming they had the authority to bind MyMichigan, would have "known" and "understood" that a license was required for each mailbox, active or inactive, as averred in the complaint. (*Id.* at PageID.15.) The EULA is the only document alleged to be a contract between these parties, and the only document alleged to create this "known" contractual duty. But since Plaintiff cannot point to any provision of the EULA that was breached, any breach of contract claim must fail on its face.

To the extent that Plaintiff avers that Defendant or its employees should have known this or that fairness would require Defendant to pay for each mailbox, the court cannot "create an obligation absent from the contract." *North American Photon Infotech Ltd v. Zoominfo LLC*, 2021 WL 4482208, at *5 (S.D. N.Y. Sept. 30, 2021); *accord Ford Motor Co. v. Airpro Diagnostics LLC*, 632 F. Supp. 3d 753, 763 (E.D. Mich. 2022).

Although Plaintiff correctly notes that it does not have to "prove" the factual veracity of any averments at the pleading stage, it does have an obligation to provide

"plausible grounds to infer" that the elements of a claim for relief could be met. *Twombly*, 550 U.S. at 556. Mere labels, conclusory statements, or "formulaic recitations" of the elements of a cause of action are not sufficient to meet this burden if they are unsupported by adequate factual allegations. *Id*. Plaintiff's complaint fails to meet this burden.[1]

In addition, to the extent that Plaintiff attempts to rely on later statements, this argument must also fail. Plaintiff contends that in November 2018, Zantaz asked MyMichigan how many NearPoint licenses it was using and "MyMichigan confirmed its understanding that a NearPoint license is required for each individual user email mailbox whether active or inactive." (ECF No. 6, PageID.17.) This allegation is also without reference to any email, affidavit or other particularized statement but even if it did occur, it cannot save the breach of contract claim nor would it suffice to lay any claim of misrepresentation. *See Chemico Systems, Inc. v. Spencer*, 2023 WL 1993783, at *9 (E.D. Mich. Feb. 14, 2023) (finding any promise of equity was not actionable in fraud because reliance on pre-contractual promises is unreasonable and any post-contractual promises were not made in bad faith).

As Plaintiff acknowledges in the complaint, "a third-party licensee has the ability to use more NearPoint licenses than authorized and paid for without Zantaz's knowledge, until and unless Zantaz discovers the true number of mailboxes that used or

---

[1] I note even Plaintiff's responsive briefing does not cite to any obligatory language in the EULA that would support its averments.

10

are using the NearPoint software." (ECF No. 6, PageID.17.) This flaw in the drafting process may be regrettable but cannot create a contractual obligation nor a breach thereof. Therefore, I recommend the Defendant's motion to dismiss be granted as to the breach of contract claim.[i]

As to the unjust enrichment claim, Defendant contends that Plaintiff's claim is barred under either New York or Michigan law because it is duplicative and was not pled in the alternative. (ECF No. 10, PageID.119.) Defendant also argues that the claim was not properly pled and does not state a claim for which relief can be granted. (*Id.*) Plaintiff counters that it has properly state a claim for unjust enrichment under New York or Michigan law. (ECF No. 18, PageID.715-16.)

Plaintiff's complaint asserts a second cause of action entitled "unjust enrichment." (ECF No. 6, PageID.22-23.) Although Defendant argues that "Plaintiff's allegation that a valid contract exists between the parties prohibits its unjust enrichment claim" (ECF No. 10, PageID.121), a plaintiff is entitled to plead an unjust enrichment claim in the event its breach of contract claim fails. *Eggleston v. Twentieth Century Fox Film Corp.*, ___ F. Supp. 3d ___, 2023 WL 6397003, at *4 (E.D. Mich. Sept. 29, 2023); *Matthews v. ALC Partner, Inc.*, 2008 WL 5188760, at *12 (E.D. Mich. Dec. 9, 2009); *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2nd Cir. 1996). Plaintiff cannot recover on both claims because they are at odds with one another, but Plaintiff may plead them in the alternative.

As to whether Plaintiff's complaint sufficiently states the alternative claim for unjust enrichment, as noted by both parties the elements of the cause of action and virtually the same under Michigan or New York law. Plaintiff must show that defendant gained a benefit or was enriched at the plaintiff's expense and that an inequity would result if the defendant was permitted to retain the benefit received. *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.S. 3d 173, 182 (N.Y. 2011); *Wells Fargo Bank, N.A. v. Burke*, 155 A.D. 3d 668, 671 (N.Y. App. Div. 2d Dep't 2017).

Here, the complaint alleges that "Defendant knew and understood that Plaintiff owned the exclusive right to license the NearPoint software product" and that "Defendant used numerous licenses for the NearPoint software product for its own benefit, without Plaintiff's authorization or consent, and without compensating Plaintiff therefor." (ECF No. 6, PageID.22-23.) In addition, the complaint avers that "Defendant benefited from its unauthorized use…at Plaintiff's expense" and that "[e]quity and good conscience require that Defendant compensate Plaintiff for its unauthorized use[.]" (ECF No. 6, PageID.23.) These allegations mirror the elements of the cause of action and are sufficient to state a claim for unjust enrichment. I therefore recommend that Defendant's motion be denied as to the unjust enrichment claim.

### D. Conclusion

For these reasons, **I RECOMMEND** the motion be **GRANTED IN PART AND DENIED IN PART**, e.g., that this Court **GRANT** Defendant's motion to dismiss as to

Plaintiff's breach of contract claim and **DENY** the motion as to Plaintiff's unjust enrichment claim. (ECF No. 15).

### III. <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R.

13

Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 5, 2024                                    s/ PATRICIA T. MORRIS
                                                         Patricia T. Morris
                                                         United States Magistrate Judge

---

[i] Because of the recommended resolution, I need not address the limitation period issue.